**UNITED STATES of America, Appellee,**

v.

**Enrique DIAZ, Defendant-Appellant.**

**No. 74–1427.**

United States Court of Appeals,
First Circuit.

May 5, 1976.

Nicolas Nogueras, Jr., San Juan, P. R., for defendant-appellant.

Jose Anglada, Asst. U. S. Atty., and Julio Morales Sanchez, U. S. Atty., San Juan, P. R., for appellee.

Before COFFIN, Chief Judge, MATTHES,* Senior Circuit Judge, and McENTEE, Circuit Judge.

MATTHES, Senior Circuit Judge.

A two-count indictment filed May 9, 1973, charged that on January 17 and May 1 of 1973, defendant-appellant Enrique Diaz possessed with intent to distribute and did distribute specified quantities of cocaine, in violation of 21 U.S.C. § 841(a)(1). Trial to a jury commenced July 15, 1974, and defendant was found guilty on both counts. The judge (Honorable Hernan G. Pesquera) imposed a prison term of three years and a special parole term of three years on each count, the sentences to run concurrently.

The government's case, essentially unrebutted, showed that defendant had made the distributions of cocaine charged in the indictment. It was defendant's ill fortune that his distributee turned out to be a government informant. On this appeal, defendant makes no challenge to the sufficiency of the evidence supporting the convictions. Rather, he urges reversal on the grounds (1) that the government denied him his right to a speedy trial; (2) that evidence introduced at trial was obtained in violation of the Fourth Amendment; and (3) that the government did not fulfill its duties with respect to production of the informant at trial. We discuss these points seriatim.

I. *Speedy Trial.*

The facts regarding defendant's speedy trial claim may be summarized as follows. A fourteen-month period, from May of 1973 to July of 1974, intervened between defendant's indictment and trial. During the initial five months of this period, defendant engaged in the successive hiring and firing of at least six counsel. The principal efforts of these briefly employed attorneys were directed to motions for the reduction of defendant's bond and, upon denial of the motions, the filing of motions for reconsideration.

The case had been set for a pretrial conference on September 14, 1973, with the actual trial set to begin on September 26, 1973. On September 12, two days before the scheduled pretrial proceedings, defendant filed a belated motion for the suppression of evidence. The court scheduled a hearing on the motion for the day originally

* Of the Eighth Circuit, sitting by designation.

set for the beginning of the trial (September 26). The hearing lasted several days, and it was not until late October, after the filing of memoranda of law, that the court took the motion under advisement. On May 20, 1974, more than six and one-half months thereafter, the court entered an order and extensive memorandum opinion denying the motion.

Defendant first asserted his right to a speedy trial in a December 6, 1973 motion requesting dismissal of the case and/or release from custody. This was followed by similar motions filed February 25, 1974, and May 21, 1974. Each of the motions was opposed by the government, and relief was denied. Defendant urges that the denial of relief constituted error.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that resolution of a speedy trial claim should proceed on the basis of a balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the nature of the prejudice, if any, to the accused; and (4) the timeliness of the accused's assertion of his speedy trial right. In the instant case it is clear that the balance of these factors is adverse to the defendant.

As noted previously, the length of the delay was fourteen months. This period of time is sufficient to act as a triggering mechanism requiring further inquiry into the claim. *See Barker v. Wingo, supra* at 530, 92 S.Ct. at 2191, 33 L.Ed.2d at 116; *United States v. Fay*, 505 F.2d 1037 (1st Cir. 1974); *United States v. Churchill*, 483 F.2d 268 (1st Cir. 1973). However, this term is not "so inordinately lengthy as to automatically weigh heavily against the state." *Morris v. Wyrick*, 516 F.2d 1387 (8th Cir. 1975).

Given that the length of the delay is sufficient to act as a trigger, we must address the reason for the delay. It is clear to us that responsibility for the delay rests largely with the defendant. The initial five months of the delay were occupied by defendant's "revolving door" hiring and firing of attorneys. The remainder of the period was largely occupied by the court's consideration of his belated motion for the suppression of evidence. While the time spent by the trial court in disposing of this motion was unfortunate, there is no apparent justification for defendant's failure to make the motion promptly. Had the motion been made promptly, the time of trial would have been considerably advanced. Moreover, there is no evidence that the prosecution at any time requested a delay of the trial; on the contrary, the government was apparently prepared to go forward once the motions before the court were decided. *See United States v. Churchill, supra.*

In a somewhat different context, the District of Columbia Circuit recently made the following observations:

We do not suggest that lengthy periods of time devoted substantially to procedures initiated by a defendant to protect his rights may never form the predicate for a determination that a speedy trial has been denied. But at least where this activity has not been further protracted by dilatory tactics engaged in by the prosecution, we are reluctant to assign controlling weight to delay occasioned by the defendant for his own protection.

*United States v. Lynch*, 163 U.S.App.D.C. 6, 499 F.2d 1011, 1018 (1974). We think this principle is applicable to the delay following the making of the suppression motion, and that the delay prior to the suppression motion is clearly attributable to defendant's tactics. Accordingly, the reason for the delay does not weigh appreciably against the government.

Similarly, we do not find that the accused has suffered substantial prejudice. Although defendant suffered some hardship by virtue of his pretrial incarceration, he does not allege in any particularity how he may be said to have suffered *oppressive* pretrial incarceration or unusual anxiety or concern. Moreover, there is no specification as to how the delay impaired his ability to mount a defense. *See Morris v. Wyrick, supra; United States v. Churchill, supra; United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973).

With respect to the final factor, the timeliness of defendant's assertion of his right to a speedy trial, we note that defendant brought his speedy trial claim to the attention of the court approximately midway through the fourteen-month period of delay. However, whatever weight we might give to defendant on this factor is diluted by the fact that his assertion of his rights was proceeded by the above-discussed series of tactical maneuvers which clearly delayed the progress of the case.

In summary, we find much of the regrettable delay in this case attributable to the defendant. Further, there is no allegation of serious prejudice. We conclude that defendant was not denied his right to a speedy trial and that he was not entitled to dismissal of the charges.

II. *Alleged Fourth Amendment Violation.*

▮ Defendant's second principal contention is that the cocaine and related evidence introduced with respect to Count I of the indictment were obtained in violation of the Fourth Amendment. This contention derives from the fact that the informant involved in the unlawful transaction charged in Count I wore a concealed electronic transmitting device through which government agents stationed at a receiving device were able to overhear and record the incriminating conversation between the informant and the defendant. As noted previously, defendant made a belated and unsuccessful motion for the suppression of the evidence resulting from this electronic monitoring.[1]

1. We note that no electronic monitoring was involved in the unlawful transactions alleged in Count II of the indictment. This latter transaction was witnessed by a government agent, and the agent's testimony was not refuted.

2. *Katz* involved the electronic monitoring of a telephone call made from a public telephone booth. Neither party to the conversation had consented to the eavesdropping.

3. Defendant additionally contends that the prosecution failed to establish an adequate

In *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), the Supreme Court held that electronic monitoring of this type does not contravene the Fourth Amendment. Defendant argues that the subsequent case of *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) has vitiated the holding in *On Lee*. The *Katz* case is factually inapposite.[2] Nevertheless, defendant urges that the principle of *Katz*—namely, that the Fourth Amendment protects *persons* in their justifiable expectations of privacy—leads inevitably to condemnation of the monitoring of conversations between a criminal defendant and a consenting government informant.

This argument was rejected by the Supreme Court in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Justice White, writing for four members of the Court, indicated that a defendant does not have

\* \* \* a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police.

401 U.S. at 749, 91 S.Ct. at 1125, 28 L.Ed.2d at 457. *See also United States v. Gocke*, 507 F.2d 820 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Santillo*, 507 F.2d 629 (3rd Cir.), *cert. denied sub nom., Buchert v. United States*, 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975); *United States v. Bonanno*, 487 F.2d 654 (2nd Cir. 1973). Thus, defendant's legal argument is without merit.[3]

foundation for admission of the recorded conversations. This contention is without merit. *See United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *United States v. Rizzo*, 492 F.2d 443 (2nd Cir.), *cert. denied*, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974); *United States v. Bonanno*, 487 F.2d 654 (2nd Cir. 1973). We also reject defendant's contention that the prosecution failed to adequately establish the informant's consent. *See United States v. McMillan, supra* at 104 n.2; *United States v. James*, 495 F.2d 434, 437 n.7

III. *Production of the Informant.*

Defendant's third principal contention is that the government failed in its obligations with respect to production of the informant. More specifically, defendant contends that the trial court erred in not granting his motion for a continuance during which the government would have been required to exert further efforts to locate the informant.

■ Defendant's first attempt to enlist the aid of the prosecution in producing the informant was made September 18, 1973. On that date defendant filed a motion requesting the court to require the prosecution to provide defendant with "the most recent address of the informer, Carlos Franco." The government responded promptly to the motion, providing defendant with Franco's last known address.

It was not until ten months thereafter, during the second day of trial, that defendant again brought the matter of the informant to the attention of the court. Informing the court that he had been unable to locate the informant, defendant's counsel requested that the court instruct the government to attempt to locate the informant by the following court day. The United States Attorney objected that the government had not been previously requested to produce the informant, and that defendant had apparently made only minimal efforts to find the informant. However, the court instructed the prosecutor to check for the informant at certain locations named by defendant and to report to the court.

The government made the efforts directed by the court. In its report to the court on the third day of trial, the United States Attorney advised that no success had been achieved in locating the informant. Acquaintances of Franco at his former known locations reported that they had not seen Franco for over a year.

At the close of the third day of trial, defendant moved for a "continuance of the proceedings for at least a week" in order that the government could make further efforts to locate and produce the informant. The court denied the motion, finding it to be untimely in that the informant "could have been searched for long before this time."

On these facts, defendant urges that the government failed in its obligations and that the court should have granted a continuance. We find this contention without merit.

As we observed in *United States v. Williams*, 496 F.2d 378 (1st Cir. 1974), the government's duty with respect to *production* of an informant, as distinguished from its duty to merely name the informant, is not easily stated. However, we noted in *Williams* that this duty is dependent on several factors, among them the extent of the government's control of the witness, the importance of the witness' testimony, and the difficulty in finding the witness. Moreover, we indicated that the government would not be held at fault for failure to produce an informant where it could affirmatively show to the court's satisfaction that the production of the informant could not be expected and that its conduct has been diligent. *See also United States v. DeJesus Boria*, 518 F.2d 368 (1st Cir. 1975); *United States v. Super*, 492 F.2d 319 (2nd Cir.), *cert. denied sub nom. Burns v. United States*, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 115 (1974); *United States v. Leon*, 487 F.2d 389 (9th Cir. 1973).

In the instant case, the government properly disclosed the name and address of the informant to the defendant at a time well in advance of trial. The defendant and the informant were well acquainted with each other,[4] and there was no subsequent com-

(5th Cir.), *cert. denied*, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *United States v. Bonanno, supra.*

4. By defendant's own admission, he and the informant, one Carlos Franco, were acquaint-

ances. In his opening statement counsel for defendant described how the two had had financial dealings prior to the date of the first

munication from the defendant (until the time of trial) indicating any difficulty with respect to the informant. Moreover, it is clear that by the time of the trial, when defendant made his belated motion for production of the informant, the informant was nowhere to be found.[5] Since production of the informant could not then be expected and since the government had exercised reasonable diligence under all the circumstances, there was no denial of due process and the court did not err in refusing a continuance.[6]

IV. *Conclusion.*

Defendant makes several additional contentions which we have considered and found to be without merit. The trial was conducted free of any prejudicial error, and we thus affirm the judgment of conviction.

offense charged in the indictment. To this end, counsel later introduced into evidence certain checks issued by defendant which were made payable to and endorsed by Carlos Franco.

5. On opening argument, defendant's counsel noted several times to the jury that Carlos Franco would not be present at the trial. Counsel explained that he would "establish the fact that Mr. Carlos Franco left and has not been found."

In view of counsel's evident knowledge that Franco was unavailable, his attempts to have the government produce Franco are suspect. We note that counsel requested the court to deliver a "missing witness" instruction, which the court, presumably finding Franco equally unavailable to both sides, properly refused to do. The request for such an instruction some-

times indicates that defense counsel is more interested in exploiting the witness's absence than seeing him produced. *See United States v. Williams*, 496 F.2d 378 (1st Cir. 1974); *United States v. Super*, 492 F.2d 319 (2nd Cir.), *cert. denied sub nom. Burns v. United States*, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 115 (1974).

6. We note, in addition, that defendant has not alleged with any specificity how the testimony of the informant would have helped his defense. *See United States v. Super*, 492 F.2d 319 (2nd Cir.), *cert. denied sub nom. Burns v. United States*, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 115 (1974).